■ In the Matter of KARL EASTON et al., Respondents, v STATE OF NEW YORK COMMISSION ON QUALITY OF CARE FOR THE MENTALLY DISABLED et al., Appellants. [608 NYS2d 304] —In a proceeding pursuant to CPLR article 78 to compel the appellants to cease distribution of a report critical of the petitioners issued in October 1986, the appeal is from a judgment of the Supreme Court, Kings County (Irving S. Aronin, J.), dated December 6, 1991, which granted the petition.

Ordered that the judgment is reversed, on the law, with costs, and the proceeding is dismissed on the merits.

The report complained of herein, entitled *Profit Making in*

*Not-For-Profit Care: A Review of the Operations and Financial Practices of Brooklyn Psychosocial Rehabilitation Institute, Inc.,* represents the results of a 1985 investigation by the appellant State of New York Commission on Quality of Care for the Mentally Disabled (hereinafter CQC), pursuant to Mental Hygiene Law article 45, into the patient care and financial dealings of the Brooklyn Psychosocial Rehabilitation Institute, Inc. (hereinafter BPRI). BPRI was a not-for-profit corporation whose stated purpose was to provide day treatment, outpatient, and community support services to persons with psychiatric or social handicaps or mental disabilities; to operate community residences; and to lease apartments to the mentally disabled. The petitioner Dr. Karl Easton, a psychiatrist, was the founder, a board member, and the medical director of BPRI; the petitioner Jacqualine Easton is his wife.

The CQC's charges led to an investigation by the Attorney-General's office, which resulted in a civil action for recoupment. Following a lengthy trial, the Supreme Court, Kings County (Ventiera, J.H.O.), issued an 87-page decision dated November 7, 1990, concluding that the State had not proven its claim of deficient patient care and fraudulent financial practices.

Following this decision, the petitioners commenced the instant proceeding to compel the CQC to cease distribution of the report. Citing only J.H.O. Ventiera's findings, the Supreme Court concluded that the report was perforce "erroneous and flawed", and prohibited its future dissemination.

By decision and order dated July 6, 1992, this Court, *inter alia,* disagreed with J.H.O. Ventiera's dismissal of the State's complaint against Karl Easton, and awarded judgment in favor of the State against Karl Easton "in the principal sum of $7,573,703, representing the proceeds of Medicaid fraud and treble damages pursuant to Social Services Law § 145-b" *(People v Brooklyn Psychosocial Rehabilitation Inst.,* 185 AD2d 230, 231, *cert denied sub nom. Easton v New York,* — US —, 114 S Ct 178). This Court specifically found that many of the CQC's most serious charges had been proved by the People "by overwhelming evidence". In light of this decision and order, we find it appropriate to reverse the order appealed from herein, and to permit the CQC to disseminate its report.

We further note that this matter was appropriately addressed in a proceeding pursuant to CPLR article 78, as mandamus is a proper remedy to compel an administrative agency to cease dissemination of a report whose factual findings conflict with those determined by a court after trial—had

the latter not been reversed on appeal *(see,* McLaughlin, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C7803:4, at 333; *Matter of Pell v Board of Educ.,* 34 NY2d 222, 231; *Matter of Freidus v Guggenheimer,* 57 AD2d 760; *see also, Matter of Geller v Veteran,* 49 AD2d 574; 24 Carmody-Wait 2d, NY Prac § 145:117). Bracken, J. P., Balletta, Pizzuto and Friedmann, JJ., concur.